**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN ELLIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 23-cv-00123** |
| **v.** | ) | |
| | ) | **Hon. Matthew F. Kennelly** |
| **UNITED AIRLINES, INC.,** | ) | |
| | ) | **Mag. Judge Heather K. McShain** |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS AND ACCOMPANYING MEMORANDUM IN SUPPORT**

## **TABLE OF CONTENTS**

ARGUMENT AND AUTHORITIES ........................................................................... 1

   I.   Standard under Fed. R. Civ. P. 12(b)(6) ....................................................... 1

   II.   Plaintiff's Allegations Support His Claim That Defendant Violated the  Americans With Disability Act. .................................................................... 2

      A.   Defendant's Demand for Plaintiff's Vaccination Information Constitutes as an Unjustified Medical Examination and Inquiry in Violation of 42 U.S.C. § 12112(d)(4)(A), and was Asked for the Sole Purpose of Determining if Plaintiff had a Disability. .................. 2

      B.   Plaintiff has Alleged Sufficient Facts to Establish that Defendant Regarded him as Disabled at the Time he was Terminated ............................................... 7

   III.   The Inquiry Filed by Plaintiff with EEOC was Timely and its Contents Suffice as a Charge of Discrimination; Assuming Arguendo the Inquiry does not Qualify as a Charge, Equitable Tolling should be Applied as Plaintiff – a Pro Se Charging Party – Relied on the Agency to Shepherd him through the Administrative Process. .................. 14

CONCLUSION .................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Alvarado v. ValCap Group, LLC*,
  No. 3:21-CV-1830-D, 2022 WL 19686, at *7 n.13 (N.D. Tx. Jan. 3, 2022) and 2022 WL
  953331, at *5 (N.D. Tx. Mar. 30, 2022) ................................................................................ 13
*Arellano v. McDonough*,
  143 S. Ct. 543, 547, 214 L.Ed.2d 315 (2023) ...................................................................... 16
*Booth v. GTE Fed. Credit Union*,
  No. 8:21-cv-1509-KKM-JSS, 2021 WL 5416690, at *6 (M.D. Fla. Nov. 20, 2021) .............. 12
*Bronson v. Ann & Robert H. Lurie Children' Hospital of Chicago*,
  --- F.4th ---, 2023 WL 3719771, at *6 (7th Cir., May 30, 2023) .............................................. 1
*Brown v. Roanoke Rehab. & Healthcare Ctr.*,
  586 F.Supp.3d 1171, 1177 (M.D. Ala. 2022) ................................................................ 12, 13
*BST Holdings, L.L.C. v. OSHA*,
  No. 21-60845, 2021 WL 5279381, at *5 (5th Cir. Nov. 12, 2021) ........................................... 5
*Burbach v. Arconic Corp.*,
  --- F.Supp.3d --, 2021 WL 4306244, at *6 (W.D. Pa. Sept. 22, 2021) ................................... 13
*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837, 844 (1984) ....................................................................................................... 3
*Cover v. OSF Healthcare Systems*,
  No. 18 C 50114, 2020 WL 108422, at *1 (N.D. Ill., Jan. 9, 2020) ........................................ 15
*Diedrich v. Ocwen Loan Servicing, LLC*,
  839 F.3d 583, 589 (7th Cir. 2016) ........................................................................................... 2
*E.E.O.C. v. Commercial Office Products Co.*,
  486 U.S. 107, 124, 108 S. Ct. 1666, 100 L.Ed.2d 96 (1988) ................................................ 17
*E.E.O.C. v. Watkins Motor Lines, Inc.*,
  553 F.3d 593, 597-98 (7th Cir. 2009) .................................................................................... 15
*Elzeftawy v. Pernix Grp., Inc.*,
  477 F.Supp.3d 734, 766-67 (N.D. Ill. 2020) .......................................................................... 14
*Equal Emp't Opportunity Comm'n v. BNSF Ry. Co.*,
  902 F.3d 916, 924 (9th Cir. 2018) ........................................................................................... 7
*Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*,
  852 F.3d 1018, 1032 (11th Cir. 2016) ...................................................................................... 3
*Hughes v. Northwestern University*,
  63 F. 4th 615, 630 (7th Cir. 2023) ........................................................................................... 2
*Hunt v. Central Consol. Sch. Dist.*,
  951 F.Supp.2d 1136, 1173 (D.N.M. 2013) ............................................................................... 1
*Jimenez v. Laborer's Welfare Fund*,
  493 F.Supp.3d 671, 680 (N.D. Ill. 2020) ............................................................................... 16
*Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*,
  55 F.4th 517, 523 (7th Cir. 2022) ............................................................................................ 1
*Martin v. Siciliano*,

No. 22-cv-2344, 2023 WL 3320428, at *3 (N.D. Ill., May 9, 2023) ........................ 1

*McCauley v. City of Chicago,*
   671 F.3d 611, 616 (7th Cir. 2011)................................................................... 1

*Mesa v. City of San Antonio,*
   No. SA-17-CV-654-XR, 2018 WL 3946549, at *14 (W.D. Tex. Aug. 16, 2018) .................. 12

*Nat'l R.R. Passenger Corp. v. Morgan,*
   536 U.S. 101, 111 n. 6 (2002) ...................................................................... 3

*New v. Bd. of County Comm'rs for Tulsa County,*
   434 F.Supp.3d 1219, 1223 (N.D. Okla. 2020)........................................................ 1

*Nunies v. HIE Holdings, Inc.,*
   908 F.3d 428, 435 (9th Cir. 2018) ................................................................ 12

*Palmieri v. City of Hartford,*
   947 F. Supp. 2d 187, 200 (D. Conn. 2013) ......................................................... 7

*Polak v. Sterilite Corp.,*
   No. 3:19-CV-2972-D, 2021 WL 175357, at *5 (N.D. Tex. May 4, 2021), aff'd, No. 21-10549,
   2022 WL 457822 (5th Cir. Feb. 15, 2022) ......................................................... 8

*Richardson v. Chicago Transit Authority,*
   926 F.3d 881, 889 (7th Cir. 2019) ................................................................ 3

*School Board of Nassau County v. Arline,*
   480 U.S. 273 (1987)............................................................................... 10

*Silk v. Bd. of Trs., Moraine Valley Cmty, Coll.,*
   795 F.3d 698, 706 (7th Cir. 2015) ...........................................................11, 12

*Skidmore v. Swift & Co.,*
   323 U.S. 134 (1944) ............................................................................... 3

*Smith v. Midland Brake, Inc.,*
   180 F.3d 1154, 1165 (10th Cir. 1999).............................................................. 3

*Sullivan v. Quest Diagnostics, LLC,*
   No. 3:16-cv-902, 2018 WL 995108, at *12 (D. Conn. Feb. 21, 2018) .................................. 7

*SunDance Rehab. Corp.,*
   466 F.3d 490, 500 (6th Cir. 2006) ................................................................. 3

*Thiele Kaolin, Inc. v. Wisconsin Central LTD,*
   --- F.Supp.3d ---, 2022 WL 17533065, at *2 (N.D. Ill., Dec. 8, 2022) .............................. 1

*Thompson v. United States,*
   --- F.Supp.3d ---, 2023 WL 2751112, at *5 (N.D. Ill., March 31,2023)............................... 16

*University of Texas Southwestern Medical Center v. Nassar,*
   570 U.S. 338, 360 (2013) .......................................................................... 3

*Wheeler v. Brady Corp.,*
   712 F.Supp.2d 801, 820 (E.D. Wis. 2010) ........................................................... 14

*Young v. United Parcel Service, Inc.,*
   575 U.S. 206, 225, 135 S. Ct. 1338, 191 L.Ed.2d 279 (2015) ....................................... 3

**Statutes**

29 C.F.R. § 1630.2(g)..............................................................................................6

42 U.S.C. § 12102(1) (A)-(C) ...............................................................................6

42 U.S.C. § 12102(3)(A)-(B) ..............................................................................11

42 U.S.C. § 12102(4)(A).....................................................................................11

42 U.S.C. § 12102(4)(D) ....................................................................................12

42 U.S.C. § 12111(2) ............................................................................................6

42 U.S.C. § 12112(d)(4)(A) ..................................................................................6

42 U.S.C. § 2000e-5(e)(1)...................................................................................18

**Regulations**

29 C.F.R. Pt. 1630 ..............................................................................................18

PURSUANT TO FED. R. CIV. P. 12(b)(6), Plaintiff John Ellis herein submits his Response

in Opposition to the Motion to Dismiss (ECF 18) filed by Defendant United Airlines, Inc. ("UAL")

and UAL's Memorandum in Support of the Motion (ECF 19) in response to Plaintiff's First

Amended Complaint ("FAC) (ECF 21).

## ARGUMENT AND AUTHORITIES

### I.     Standard under Fed. R. Civ. P. 12(b)(6).

To withstand dismissal under FED. R. CIV. P. 12(b)(6), a complaint must contain a sufficient

number of fact allegations "'to state a claim that is plausible on its face.'" *Bronson v. Ann & Robert*

*H. Lurie Children' Hospital of Chicago*, --- F.4th ---, 2023 WL 3719771, at *6 (7th Cir., May 30,

2023) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d

929 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Martin v. Siciliano*, No. 22-cv-2344, 2023 WL 3320428, at *3 (N.D. Ill., May 9, 2023). All well-

pleaded facts in the complaint are accepted as true and all reasonable inferences are drawn in favor

of the plaintiff. *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co*., 55 F.4th 517, 523 (7th Cir.

2022). This acceptance as true standard applies even if the allegations in the complaint are

"doubtful." *New v. Bd. of County Comm'rs for Tulsa County*, 434 F.Supp.3d 1219, 1223 (N.D.

Okla. 2020). However, mere conclusory allegations are not afforded this lens of truthfulness.

*McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint rather than

its merits. *Thiele Kaolin, Inc. v. Wisconsin Central LTD*, --- F.Supp.3d ---, 2022 WL 17533065, at

*2 (N.D. Ill., Dec. 8, 2022). *See also Hunt v. Central Consol. Sch. Dist*., 951 F.Supp.2d 1136, 1173

(D.N.M. 2013) (noting that the purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to

"test[] the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true" (citation omitted)). "A court's role in evaluating pleadings is to decide whether the plaintiff's allegations are plausible – not which side's version is more probable." *Hughes v. Northwestern University*, 63 F. 4th 615, 630 (7th Cir. 2023). Thus, a well-pleaded complaint must be allowed to proceed "'even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016) (quoting *Twombly*, 550 U.S. at 556).

## II. Plaintiff's Allegations Support His Claim That Defendant Violated the Americans With Disability Act.

Pursuant to 42 U.S.C. § 12112(a), "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." A "covered entity" is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). Under extant federal law, a person with a disability is one who suffers from "a physical or mental impairment that substantially limits one or more major life activities of such individual," or has "a record of such an impairment," or is "*regarded as having such an impairment*." 42 U.S.C. § 12102(1) (A)-(C) (emphasis added); 29 C.F.R. § 1630.2(g).

### DEFENDANT'S DEMAND FOR PLAINTIFF'S VACCINATION INFORMATION CONSTITUTES AS AN UNJUSTIFIED MEDICAL EXAMINATION AND INQUIRY IN VIOLATION OF 42 U.S.C. § 12112(D)(4)(A), AND WAS ASKED FOR THE SOLE PURPOSE OF DETERMINING IF PLAINTIFF HAD A DISABILITY.

Pursuant to 42 U.S.C. § 12112(d)(4)(A):

A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

Defendant heavily relies on the EEOC's guidance in asserting its inquiry into Plaintiff's vaccination status is non-medical, but EEOC administrative interpretations of federal discrimination statutes are not controlling upon courts. *See Smith v. Midland Brake, Inc.*,180 F.3d 1154, 1165 (10th Cir. 1999) (citing *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 n. 5 (10th Cir. 1999). Indeed, EEOC guidance is not afforded *Chevron* deference but rather subjected to the less deferential *Skidmore* deference standard. *Richardson v. Chicago Transit Authority*, 926 F.3d 881, 889 (7th Cir. 2019); s*ee also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984); s*ee also Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). "The weight of deference afforded to agency interpretations under *Skidmore* depends upon 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013) (quoting *Skidmore*, 323 U.S. at 140)). Accordingly, EEOC's "Enforcement Guidance is entitled to respect only to the extent of its ***persuasive power***." *E.E.O.C. v. SunDance Rehab. Corp.*, 466 F.3d 490, 500 (6th Cir. 2006) (emphasis added); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 n. 6 (2002); *see also Young v. United Parcel Service, Inc.*, 575 U.S. 206, 225, 135 S. Ct. 1338, 191 L.Ed.2d 279 (2015) (declining to rely upon the EEOC's guidance because (1) the guidance was promulgated "only recently," (2) "the EEOC's current guidelines take a position about which the EEOC's previous guidelines were silent," and (3) "that position is inconsistent with positions for which the Government has long advocated."); *see also Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1032 (11th Cir. 2016) (declining to give EEOC guidance "much deference or weight" because the Commission "has not provided a reasoned justification" for the shift in its guidance."). The EEOC's "guidance" on whether inquiry into one's vaccination status

3

is a non-medical examination is certainly not persuasive, especially since it is contrary to other, similar EEOC guidance and the EEOC has not provided any rationale for its shift in position.

The EEOC has long held that employer inquiries as to what prescription medications an employee is taking are medical examinations that are prohibited under the ADA, absent a showing of business necessity or direct threat from the employee. *See* EEOC Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act, ¶ B.1 (https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees) (last visited July 5, 2023). The rationale is that the prescription is likely to reveal the underlying disability (or possible disability if the medication is a prophylactic). This rationale is underscored by the following bullet point in the EEOC's guidance, which proscribes "asking an employee a **broad** question about his/her impairments that is **likely to elicit information about a disability**." *Id.* (emphasis in original and added).

Notwithstanding the clear similarities between taking prescription medicine as either a cure or preventive measure against illness and receiving a vaccination as a cure or prophylactic measure, the Commission determined—in a three-sentence paragraph—that COVID-19 vaccination questions were somehow outside of the ADA's coverage. *See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, ¶K.7, (https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws) (last visited July 5, 2023).

The EEOC's support for its position that inquiring whether an employee has been vaccinated against COVID-19 is not a disability-related inquiry is limited to simple and brief guidance, issued in advance of and apparently in support of the Government's mandatory

4

vaccination program (and announced by the President of the United States while saying that vaccine mandates were designed "issued "to protect vaccinated workers from unvaccinated co-workers," with re-emphasis that this was a "pandemic of the unvaccinated.")[1] The EEOC's recently promulgated guidance cites no legal authority distinguishing between prescription medication and a prescribed vaccination.

Further, its reason for making the distinction is singularly unpersuasive. The Commission asserts that an employer who asks an employee whether he obtained a COVID-19 vaccination is not asking a question that is "likely to disclose the existence of a disability" and that "there are many reasons an employee may not show documentation or other confirmation of vaccination besides having a disability." *Id*. Courts are counseled from turning a blind eye to such announcements, as they strike at the very heart of why vaccine mandates were being issued in the first place. *See BST Holdings, L.L.C. v. OSHA*, No. 21-60845, 2021 WL 5279381, at *5 (5th Cir. Nov. 12, 2021) ("In reviewing agency pronouncements, courts need not turn a blind eye to the

---

[1] President Biden, Remarks on Fighting the COVID-19 Pandemic, available at: https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/ (last visited July 7, 2023). *See also* CNBC "Biden says unvaccinated Americans are 'costing all of us' as he presses Covid vaccine mandates" (Biden said unvaccinated people are hindering economic growth, costing jobs and putting unnecessary strain on the health-care system), Sept. 24, 2021, reported at https://www.cnbc.com/2021/09/24/biden-says-unvaccinated-americans-are-costing-all-of-us-as-he-presses-covid-vaccine-mandates.html (last visited July 7, 2023); CNN, "Biden warns of winter of 'severe illness and death' for unvaccinated due to Omicron" ("We are looking at a winter of severe illness and death for the unvaccinated -- for themselves, their families and the hospitals they'll soon overwhelm."), reported at https://www.cnn.com/2021/12/16/politics/joe-biden-warning-winter/index.html (last visited July 7, 2023); Presidential Press Conference, Jan. 4, 2022 ("The unvaccinated are taking up hospital beds and crowding emergency rooms and intensive care units. That's displaced other people who need access to those hospitals. …So there's no excuse, no excuse for anyone being unvaccinated. This continues to be a pandemic of the unvaccinated …. And for parents with kids too young to be vaccinated, surround your kids with people who are vaccinated"), reported at https://www.rev.com/blog/transcripts/joe-biden-covid-omicron-spike-speech-transcript (last visited July 7, 2023).

statements of those issuing such pronouncements. In fact, courts have an affirmative duty *not* to do so." (citations omitted)).

This simplistic analysis, which Defendant asks the Court to accept at face value, contains several deficiencies making it unpersuasive and unreliable. The first is that there appears to be virtually no difference between asking an employee what medications he is taking and asking an employee what vaccinations he has had. Indeed, the guidance points to none. There are no examples given of reasons why an employee may not show documentation of vaccination that contrast with why an employee would refuse to answer a question about his prescription medication. From a purely logical perspective, the reasons for denying one inquiry would appear to be virtually the same as denying the other. In either case, the employer is seeking medical information that may disclose the existence of a disability, particularly when the inquiry is not a broad one, but instead focuses on a particular illness (in this case, a contagious illness).

The EEOC's own guidance advises employers that asking an employee about his eligibility for vaccination, versus whether he is actually vaccinated, triggers ADA protections as a medical inquiry. Yet, the Commission maintains that the actual vaccination question is not a medical inquiry. This distinction is unsupported and further underscores the unpersuasive nature of the EEOC's position.

More importantly, the Complaint alleges that the purpose of the vaccination inquiry was inexorably linked with the employer's perception that Plaintiff was either sick or contagious, if he was not vaccinated. Thus, the purpose of this inquiry, as it was with every United employee, was to collect medical information relating to a disabling condition (either having or being contagious with COVID-19). Under these circumstances, the Court should not rely on the EEOC's guidance as determinative. The guidance is internally inconsistent with other guidance promulgated by the

Commission regarding prescription medicine. Further, the guidance is particularly unpersuasive in the situation alleged within the Complaint because the vaccine inquiry was aimed at a disabling condition. The Court should deny Defendant's Motion to Dismiss on these grounds.

### A. Plaintiff has Alleged Sufficient Facts to Establish that Defendant Regarded him as Disabled at the Time he was Terminated.

An individual is regarded as having such an impairment "if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," but impairments that are "transitory *and* minor" do not qualify. 42 U.S.C. § 12102(3)(A)-(B) (emphasis added).

In a "regarded as" or perceived disability discrimination claim, a plaintiff "need only demonstrate that the employer regarded them as impaired, whether or not that impairment is believed to limit a major life activity." *Palmieri v. City of Hartford*, 947 F. Supp. 2d 187, 200 (D. Conn. 2013) (citing *Hilton v. Wright*, 673 F.3d 120, 129 (2nd Cir. 2012)); *see also Sullivan v. Quest Diagnostics, LLC*, No. 3:16-cv-902, 2018 WL 995108, at *12 (D. Conn. Feb. 21, 2018). "Construing the definition of 'perceived impairment' to encompass situations where an employer assumes an employee has an impairment or disability is consistent with the ADA's mandate that 'the definition of disability…be construed in favor of broad coverage under [the ADA], to the maximum extent permitted by the terms of the [the ADA].' *See* 42 U.S.C. § 12102(4)(A)." *Equal Emp't Opportunity Comm'n v. BNSF Ry. Co.*, 902 F.3d 916, 924 (9th Cir. 2018) (holding that defendant perceived plaintiff "to have an impairment for the purposes of the ADA").

"Under the 2008 amendments to the ADA, an individual is 'regarded as' disabled when he is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity." *Polak v. Sterilite Corp.*, No. 3:19-CV-

2972-D, 2021 WL 175357, at *5 (N.D. Tex. May 4, 2021), aff'd, No. 21-10549, 2022 WL 457822 (5th Cir. Feb. 15, 2022) (citing 42 U.S.C. § 12102(3)(A)). The Plaintiff need not actually be suffering from the disability at the time of the adverse action; "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D)."

As alleged within his FAC, Plaintiff was employed by Defendant as a pilot until he was terminated on November 1, 2021. *FAC, ¶¶ 8-9, 22*. As part of its newly implemented vaccine mandate program, Defendant required Plaintiff to disclose his COVID-19 vaccination status. *FAC, ¶ 13*. When Plaintiff declined to do so, Defendant regarded him as unvaccinated. *FAC, ¶ 14*. Defendant subsequently treated pilots who were unvaccinated or whose vaccination status was unknown as contagious, and thus disabled in that they were unable to perform the essential functions of their positions, with or without accommodation. *FAC, ¶ 17*. These pilots were placed on unpaid leave, barred from flying, harassed and ridiculed by United management and coworkers alike. *FAC, ¶¶ 16, 18-19*. Plaintiff was also required to wear a special mask, identifying him as unvaccinated whenever he interacted with other employees. *FAC, ¶ 20*. Defendant regarded Plaintiff as having a disability—being contagious with COVID-19 or about to become so—and, as a result, prohibited Plaintiff from performing essential functions of his position, placed him on furlough, restricted his contact with coworkers, and ultimately terminated him from his position on basis of the perceived disability. *FAC, ¶¶ 37-38*.

The thought in Fall 2021 that only the unvaccinated could transmit COVID-19 was ubiquitous, because that's what the government "experts" were telling the general population (despite knowing that information was false, as later revealed during Congressional examination of Dr. Deborah Birx by U.S. Representative Jim Jordan):

Rep. Jordan: "Dr. Birx, can vaccinated people get COVID?"[2]

Dr. Birx: "Yes."[3]

Rep. Jordan: "You said in early 2021—January 2021—you knew that people who had been vaccinated could be reinfected."[4]

Dr. Birx: "I knew that people who were naturally infected were being reinfected."[5]

Rep. Jordan: "When the government told us—told the American people—that people who had been vaccinated couldn't get it, were they guessing, or were they lying?"[6]

Dr. Birx: "*I don't know.* All I know is there was evidence from the global pandemic that natural reinfection was occurring, and *because the vaccine was based on natural immunity*, *you cannot make the conclusion that the vaccine will do better than natural infection*."[7]

Rep. Jordan: "When the government told us that the vaccinated couldn't transmit it, was that a lie, or a guess, or the same answer?"[8]

Dr. Birx: "I think it was *hope* that the vaccine would work that way."[9]

Government "experts" were explicitly telling the general population that the vaccination not only prevented illness, but also transmission, and that *only* the vaccinated could get sick and transmit the disease.

Defendant, a large corporation that simultaneously implemented its own vaccination program, undoubtedly issued its program based on this false information spread by government "experts." One would be naïve to believe that Defendant issued its vaccine mandate for any other

---

[2] CSPAN. Trump Administration Response to COVID-19 Hearing [Video]. (Jun. 23, 2022) https://www.c-span.org/video/?c5021092/dr-birx-knew-natural-covid-19-reinfections-early-december-2020 at (00:27-00:30) (last visited Jul. 7, 2022).
[3] *Id.* at (00:31-00:32).
[4] *Id.* at (1:59-2:07).
[5] *Id.* at (2:07-2:11).
[6] *Id.* at (2:34-2:42).
[7] *Id.* at (2:44-3:02).
[8] *Id.* at (3:44-3:50).
[9] *Id.* at (3:51-3:54).

reason than to prevent the unvaccinated from spreading COVID-19 while at work. In other words, Defendant regarded Plaintiff as contagious with COVID-19, and quite possibly a "carrier," simply because he was unvaccinated. For that reason, Plaintiff in the present matter is not alleging that Defendant discriminated against him on the basis of a future impairment. Rather, Plaintiff has pled sufficient facts to demonstrate that Defendant viewed him as disabled (*i.e.*, being contagious with COVID-19) at the time of his termination. Specifically, Defendant was not permitted to fly, his contact with coworkers was restricted, and he was required to wear a special mask when interacting with other employees prior to his termination. *FAC, ¶¶ 37-38*. These actions would not have been taken by Defendant if it did not regard Plaintiff as being actively contagious with COVID-19.

Defendant cites quite a few cases that summarily conclude being unvaccinated is not a disability. However, none of these cases provide any analysis in their dismissal opinions, especially not on the contagiousness aspect of any vaccine mandate, despite the fact the Supreme Court has provided such analysis decades ago in the seminal employment case *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987). The *Arline* Court considered not just the effect a disease had on the plaintiff (recurring bouts of tuberculosis that required hospitalization), but also the contagiousness of the disease.[10] *Arline*, 480 U.S. at 280-82. Arline was terminated from employment "because of the threat that her relapses of tuberculosis posed to the health of others." *Id.* at 281. The Supreme Court made unequivocally clear that contagiousness and potential effects of a disability on others was as significant a concern to Congress as the impact of the disability on the individual:

> We do not agree with petitioners that, in defining a handicapped individual under §
> 504, the contagious disease can be meaningfully distinguished from the disease's
> physical effects on a claimant in a case such as this. Arline's contagiousness and

---

[10] At the time the case was decided, the statutory term was "handicapped," which was subsequently replaced with "disabled."

her physical impairment each resulted from the same underlying condition, tuberculosis. It would be unfair to allow an employer to seize upon the distinction between the effects of a disease on others and the effects of a disease on a patient and use that distinction to justify discriminatory treatment.

Nothing in the legislative history of § 504 suggests that Congress intended such a result. That history demonstrates that Congress was as concerned about the effect of an impairment on others as it was about its effect on the individual. Congress extended coverage, in 29 U.S.C. § 706(7)(B)(ii), to those who are simply "regarded as having" a physical impairment. …

Allowing discrimination based on the contagious effects of a physical impairment would be inconsistent with the basic purpose of § 504, which is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes of others. By amending the definition of "handicapped individual" to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment. Few aspects of a handicap give rise to the same level of public fear and misapprehension as contagiousness. … The fact that *some* persons who have a contagious disease may pose a serious health threat to others under certain circumstances does not justify excluding from coverage *all* persons with actual or perceived contagious diseases. Such exclusion would mean that those accused of being contagious would never have the opportunity to have their condition evaluated in light of medical evidence and a determination made as to whether they were "otherwise qualified." Rather, they would be vulnerable to discrimination on the basis of mythology—precisely the type of injury Congress sought to prevent. We conclude that the fact that a person with a record of a physical impairment is also contagious does not suffice to remove that person from coverage under § 504.

*Arline*, 480 U.S. at 282-86. The dismissing Courts are very remiss not to provide such analysis in dismissing similar cases brought on the basis of discrimination on the basis of a perceived disability and unlawful medical inquiry.

Defendant also argues that there is no viable cause of action in the present matter by raising an affirmative defense that a perceived disability cannot qualify for protection under the ADA if it is transitory and minor. *See Silk v. Bd. of Trs., Moraine Valley Cmty. Coll.*, 795 F.3d 698, 706 (7th Cir. 2015) (concluding that the employer "bears the burden of establishing that the impairment was

both transitory and minor"); *see also Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 435 (9th Cir. 2018) ("[T]he 'transitory and minor' exception is an affirmative defense, and '[a]s such, the employer bears the burden of establishing the defense."). To exclude a condition as a perceived disability, the employer must establish that the condition is transitory, *i.e.*, its effects last less than six months *and* the condition is considered "minor". As noted by the Seventh Circuit in *Silk*, the limitation on impairments lasting or expected to last less than six months applies to the "transitory" prong, whereas the statute leaves "minor" undefined. *Silk*, 795 F.3d at 706. The Seventh Circuit in *Silk* found that "a heart condition severe enough to require triple bypass surgery" was not on its face both transitory and minor. *Id*. at 706-07. Consistent with the language and intent of the ADA and its implementing regulations, the court treated "transitory" and "minor" as separate and distinct inquiries required to meet the exception to "regarded as" claims. *See Id*.

Because the term "minor" is undefined in the EEOC guidance, the question of whether COVID-19 is excluded from the perceived disability analysis is a fact intensive one, particularly unsuited for disposition at this stage of the proceedings. Some courts have noted that the assessment of a condition's status as transitory and minor is to be derived from the perception of the employer. *See Mesa v. City of San Antonio*, No. SA-17-CV-654-XR, 2018 WL 3946549, at *14 (W.D. Tex. Aug. 16, 2018) (quoting *Davis v. Vt. Dep't of Corr.*, 868 F.Supp.2d 313, 326 (D. Vt. Dept. 2012)). "[F]inding as a matter of law that an impairment is transitory and minor without a developed record is particularly ill fitting to COVID-19, a novel and debated illness that may vary widely in severity from person to person and of which the long-term effects remain unclear." *Booth v. GTE Fed. Credit Union*, No. 8:21-cv-1509-KKM-JSS, 2021 WL 5416690, at *6 (M.D. Fla. Nov. 20, 2021) (internal citation omitted); *see also Brown v. Roanoke Rehab. & Healthcare Ctr.*, 586 F.Supp.3d 1171, 1177 (M.D. Ala. 2022) (holding that plaintiff's arguments were better addressed

at the summary judgment stage, when a developed record would be presented to the court as it concerned plaintiff's COVID-19 symptoms and her employer's perception); *see also Alvarado v. ValCap Group, LLC*, No. 3:21-CV-1830-D, 2022 WL 19686, at *7 n.13 (N.D. Tx. Jan. 3, 2022) and 2022 WL 953331, at *5 (N.D. Tx. Mar. 30, 2022) (assuming "*arguendo*" that COVID-19 is an ADA-qualifying disability and declining to resolve at the motion to dismiss phase); *Burbach v. Arconic Corp.*, --- F.Supp.3d --, 2021 WL 4306244, at *6 (W.D. Pa. Sept. 22, 2021) (holding the allegation that plaintiff had trouble breathing as a result of having COVID-19 was sufficient at pleading stage for purposes of ADA claim); *Brown v. Roanoke Rehabilitation & Healthcare Center*, -- F. Supp. 3d --, 2022 WL 532936, at *6 (M.D. Ala. Feb. 22, 2022) (denying motion to dismiss because the termination of the employee shortly after she informed her employer she was experiencing COVID-19 symptoms was sufficient to infer at the pleading stage her boss regarded her as disabled).

In addition to the fact-intensive nature of the inquiry necessary to determine whether COVID-19 constitutes both a transitory and minor condition, the Court may note the undisputed fact that, regardless of United's current position, the airline in Fall of 2021 believed that COVID-19 was significant enough to mandate vaccination for its entire workforce with an unlicensed vaccine and to terminate numerous pilots and other employees who opposed the mandate. This is hardly an indicium of a minor medical condition. Indeed, the ***entire nation***—its schools, economy, etc.—shutdown, along with nationwide masking and the call to "socially distance," because there was grave concern over the transmissibility (*i.e.*, contagiousness) of this disease. To even allude that COVID-19 is minor would be to entirely disregard the events of the past three years.

As to whether Plaintiff was actually suffering from the effects of COVID-19 at the time he was terminated, this particular question is irrelevant. As mentioned above, the disability could be

episodic or in remission, so long as the effects of the disability *when active* would substantially limit a major life activity. As various courts have found, *supra*, COVID-19 is considered such a disability.

Finally, it is worth noting that "Congress did not intend for the threshold question of disability to be used as a means of excluding individuals from coverage," 29 C.F.R. Pt. 1630, App. Because many of the cases cited by Defendant are nothing more than summary conclusions and dismissals, void of any analysis (especially to the extent contained in *Arline*), it appears various Courts are attempting to rewrite and narrow the threshold question of disability in a manner to purposefully exclude individuals from coverage. This goes against Congressional intent and the very analysis in *Arline*. Accordingly, and for the reasons listed above, the Court should reject Defendant's attempt to dismiss Plaintiff's disability claim on the basis that COVID-19 is not a disability within the meaning of the statute.

**III.    The Inquiry Filed by Plaintiff with EEOC was Timely and its Contents Suffice as a Charge of Discrimination; Assuming Arguendo the Inquiry does not Qualify as a Charge, Equitable Tolling should be Applied as Plaintiff – a Pro Se Charging Party – Relied on the Agency to Shepherd him through the Administrative Process.**

To be timely, a Charging Party must file a Charge of Discrimination with EEOC within 300 days of the alleged unlawful employment practice if the Charging Party complains in a state with a deferral agency. 42 U.S.C. § 2000e-5(e)(1); *Elzeftawy v. Pernix Grp., Inc*., 477 F.Supp.3d 734, 766-67 (N.D. Ill. 2020). This 300-day time frame applies to Plaintiff, a citizen of the State of Wisconsin (FAC, ¶ 3), as Wisconsin is a deferral state. *Wheeler v. Brady Corp*., 712 F.Supp.2d 801, 820 (E.D. Wis. 2010).

"[A]n an intake questionnaire can suffice as a 'charge' if it can be 'reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.'" *Cover v. OSF Healthcare Systems*, No. 18 C

50114, 2020 WL 108422, at *1 (N.D. Ill., Jan. 9, 2020) (quoting *Federal Expres Corp. v. Holowecki*, 552 U.S. 389, 402, 128 S. Ct. 1147, 170 L.Ed.2d 10 (2008)). "We know from [*Holowecki*] that a document may be a 'charge' even if it lacks an appropriate caption and charging language. A piece of paper that alleges discrimination and asks the agency to take remedial action suffices." *E.E.O.C. v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 597-98 (7th Cir. 2009). Even where the date on the Charge of Discrimination issued by EEOC is later than the 300-day period, "*Holowecki* permits other earlier-filed documents – i.e., the EEOC intake forms – to satisfy the deadline." *Cover*, 2020 WL 108422, at *1.

Plaintiff initiated his complaint with EEOC on May 30, 2022, as evidenced by the Inquiry form generated by EEOC. *FAC, ¶ 23; Pl's Ex. No. 1 (Inquiry form)*. [11] As set forth in the FAC, this Inquiry was received 210 days after the alleged unlawful employment practice, which is described in the Inquiry form. *FAC, ¶ 23; Pl's Ex. No. 1* (Adverse Action(s)). The Inquiry records Plaintiff as the Charging Party and Defendant as the Respondent. *Pl's Ex. No. 1*. It describes the "Reason(s) for Complaint" as "Religion, Disability." [12] Finally, and notably, the Inquiry form records a Charge of Discrimination number – 440-2022-06056 – which is identical to the Charge number affixed to the Charge of Discrimination and the "Determination and Notice of Rights, *i.e.*, "Right to Sue Letter," and which was specifically pled in the FAC. *FAC, ¶¶ 23, 25, 26; Pl's Ex. Nos. 1, 2 (Charge*

---

[11] A court may consider attachments to filings pertaining to a Motion to Dismiss where such documents are referenced in the complaint and are "integral to the complaint." *Sonrai Systems, LLC v. Waste Connections, Inc.*, --- F.Supp.3d ---, 2023 WL 2266147, at *3 (N.D. Ill., Feb. 28, 2023); *Strow v. B & G Foods, Inc.*, --- F.Supp.3d ---, 2022 WL 4608948, at *7, n. 1 (N.D. Ill., Sept. 30, 2022). Plaintiff plainly alleged the existence and the contents of the Inquiry in the FAC, and Defendant has made an issue of the timeliness of Plaintiff's Charge of Discrimination (ECF 19, pp. 9-10). Consequently, this document is integral to resolving the issue raised in Section II.c. of Defendant's Motion to Dismiss Memorandum.

[12] Plaintiff opted not to allege any causes of action in his FAC pertaining to religion. However, it is beyond dispute that Plaintiff's FAC claims sound in disability discrimination.

*of Discrimination), 3 (Right to Sue Letter)*. Consequently, the Inquiry form is precisely the type of document that the United States Supreme Court, the Seventh Circuit, and the Northern District of Illinois have proclaimed sufficient to satisfy filing deadline pertaining to a Charge of Discrimination.

Even assuming *arguendo* that the Court does not find that the Inquiry form is not covered by the *Holowecki* paradigm, this circumstance qualified for equitable tolling. "'[F]iling a timely charge of discrimination is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Jimenez v. Laborer's Welfare Fund*, 493 F.Supp.3d 671, 680 (N.D. Ill. 2020) (quoting *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L.Ed.2d 234 (1982)). An entitlement to equitable tolling arises where the plaintiff has pursued his rights diligently, but "an extraordinary circumstance" intervenes to prevent a timely filing. *Thompson v. United States*, --- F.Supp.3d ---, 2023 WL 2751112, at *5 (N.D. Ill., March 31,2023) (citing to *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255, 136 S. Ct. 750, 193 L.Ed.2d 652 (2016)). As the Supreme Court has opined, "Equitable tolling effectively extends an otherwise discrete limitations period set by Congress. . .The doctrine is a traditional feature of American jurisprudence and a background principle against which Congress drafts limitations periods." *Arellano v. McDonough*, 143 S. Ct. 543, 547, 214 L.Ed.2d 315 (2023) (internal quotations and citations omitted).

As set forth in the FAC, Plaintiff lodged his complaint with EEOC as *pro se* party. *FAC, ¶ 23*. Accordingly, Plaintiff relied on the agency to timely meet deadlines that would comport with the strictures of the statute and accompanying regulations, including setting appointments and drafting a Charge of Discrimination prior to the expiration of the 300-day filing period. The federal employment discrimination statutes envision "a remedial scheme in which laypersons, rather than

lawyers, are expected to initiate the process." *E.E.O.C. v. Commercial Office Products Co*., 486 U.S. 107, 124, 108 S. Ct. 1666, 100 L.Ed.2d 96 (1988). Accordingly, "[t]he system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes." *Holowecki*, 552 U.S. at 403.

As alleged in the FAC, Plaintiff initiated his matter with EEOC well before the expiration of the 300-day filing period (within 210 days, on May 30, 2022). *FAC, ¶ 23*. Notwithstanding, the Inquiry form noted that EEOC set the initial appointment with Plaintiff for September 6, 2022, which was nine days subsequent to the expiration of the 300-day period. *FAC, ¶ 24; Pl's Ex. No. 1*. Further, EEOC, the drafter of the Charge of Discrimination, did not present the Charge to Plaintiff until well after that date, leading to the submission of the signed Charge by Plaintiff on October 5, 2022. *FAC, ¶ 54; Pl's Ex. No. 1*. Consequently, Plaintiff diligently pursued his complaint with EEOC, but the perfecting of the EEOC Form 5 – which was under the exclusive control of EEOC – was delayed by a circumstance beyond Plaintiff's control and knowledge of the procedures administered by EEOC. Equitable tolling applies. [13]

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss.

Dated: July 7, 2023                         Respectfully submitted,

                                            *s/ Daniel K. Cetina*
                                            Daniel K. Cetina (Illinois SBN: 6320423)
                                            Walsh, Knippen & Cetina, Chartered
                                            2150 Manchester Road, Suite 200
                                            Wheaton, IL 60187

---

[13] In the last paragraph on page 9 of Defendant's Memorandum, Defendant appears to plead ignorance of the contents of Plaintiff's Charge of Discrimination. If true, this points to another failing by the Milwaukee Area Office of the EEOC as the statute requires EEOC to present a copy of the Charge to the Responding Party within ten days of EEOC obtaining an executed Charge from the Charging Party. 42 U.S.C. § 2000e-5(e)(1). This militates in favor of applying equitable tolling regarding the timeliness of the filing of Plaintiff's Charge of Discrimination.

Telephone:  (630) 462-1980
Facsimile:  (630)-462-1984
dan@wkc-lawyers.com

*/s/ John J. Michels, Jr.*
John J. Michels, Jr. (*Pro Hac Vice*)
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C.  20006
Telephone:  (202) 862-4360
Facsimile:  (888) 899-6053
lmichels@fedpractice.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of July 2023, I electronically transmitted the attached

notice to the U.S. District Court Clerk's office using the CM/ECF System for filing.

*s/ Daniel K. Cetina*_____
Daniel K. Cetina (Illinois SBN: 6320423)
Walsh, Knippen & Cetina, Chartered
2150 Manchester Road, Suite 200
Wheaton, IL 60187
Telephone:  (630) 462-1980
Facsimile:  (630)-462-1984
dan@wkc-lawyers.com

18